Alfred N. LaBrecque, an insurance broker of Quincy, Massachusetts, filed claims aggregating $22,927.79 for return premiums on policies of insurance issued by the Manufacturers Liability Insurance Company to his clients with Myron J. Brown, Edward I. Edwards and Ernest Heppenheimer, who, on August 22d 1927, after the return of an order to show cause and the conclusion of the summary inquiry *Page 306 
thereon, were appointed as the permanent receivers of that company. After the submission of oral testimony and other evidence before them with respect thereto, the receivers allowed his said claims to the extent of $1,749.08 from which determination Raymond F. Barrett, administrator of the estate of said claimant, who died on September 1st, 1931, and Irving C. Hall, Jr., to whom said claimant, during his lifetime, had assigned his said claims as collateral security for an existing indebtedness, have both appealed to this court.
The inflated and exaggerated nature of the claim as filed is forcefully demonstrated by the testimony of Leo J. O'Keefe, claimant's office manager, which was adduced at the hearing before said receivers in support thereof, and from which it appears that the net amount due to claimant on his said claims was but the sum of $12,698.79, assuming that his figures and basis of computations were correct; as is, however, not the fact. As against this, there was produced on behalf of the receivers the testimony of Sadie Halpin, Bertha Kiedel and Charles C. Truex, based upon and substantiated by the insurance company's books and records, from all of which it convincingly appears that the gross amount due to said claimant is but the sum of $10,850.91 from which, however, there is to be deducted $1,496.29, for which no proofs of claim were ever filed; twenty per centum of the difference thus obtained, for commissions paid to and now to be refunded by said claimant thereon; and $5,761.48, due to the insurance company from the said claimant on his general account with it; thus leaving a net balance in favor of said claimant of a little less than the amount found and allowed by the receivers in their determination.
The credibility of none of these witnesses has been questioned nor has the accuracy or integrity of the insurance company's said books and records, kept in the regular and orderly course of its business and under the strict supervision of the banking and insurance department, in anywise here been impugned. In view of the existing dispute and discrepancies between these records and those kept by claimant, I cannot say that the receivers were not justified in accepting this *Page 307 
reliable and convincing proof in preference to the unsatisfactory character of that produced on behalf of said claimant, or that their determination based thereon and fully substantiated thereby is erroneous.
Appellants urge as a further ground for reversing the determination appealed from the fact that it represents unearned premiums as computed on a short rate instead of a pro rata
basis, predicating their contention upon the theory that the mere appointment of a receiver for an adjudged insolvent corporation,ipso facto, operates as a cancellation of all of its outstanding existing contracts, and here by analogy the policies in question. This contention, founded upon an obviously false premise, is, however, wholly inapplicable to the incontrovertible facts established in the case at bar. The ground upon which the receivers were here appointed was not the insolvency of the company — no due adjudication of insolvency ever having been entered against it — but the mismanagement of its officers. Moreover, by the provisions of the amended order under which they were appointed, the receivers were expressly authorized and empowered, inter alia, "to conduct and to continue to conduct the business" of the defendant insurance company without interruption.
Appellants further insist that the return premiums should have been computed on a pro rata basis even if the appointment of the receivers had not, ipso facto, effected a cancellation of these policies in question, because, as claimed by them, the cancellations were directed and made by the insurance company and not the holders of said policies or their representatives. There is, however, no satisfactory proof to support any such claim on their part. Even if, as they claim, the insurance company's Massachusetts representative, R.G. Sykes, had canceled these policies on June 3d 1927, as of June 2d 1927, I am unable to find any competent proof of his ever having been vested with authority to cancel issued and outstanding policies of insurance by reason of the mere appointment of receivers for the company so as to render it liable to such policy holders, under the provisions of said policies, for the unearned premiums on a prorata basis. *Page 308 
Clearly, in the absence of such proof, he was without authority to do so. Nor is sight to be lost of the fact that had he, in the first instance, possessed any such authority, it undoubtedly would have been terminated on June 1st, 1927, when the order was made and entered appointing temporary receivers for said insurance company and at the same time enjoining and restraining the exercise of any of the company's privileges or franchises, excepting through said receivers, none of whom admittedly ever authorized him to order or effect said cancellations.
Moreover, it was claimant alone who testified that the policies in question were canceled not upon his request or order but upon that of the said R.G. Sykes. It is strange indeed that claimant not only failed to produce him as a witness but even failed to account for his failure to do so. Instead, claimant produced and offered in evidence a letter under date of June 3d 1927, which he claims to have received from Mr. Sykes and wherein the latter clearly states that he, in accordance with claimant's request of June 2d 1927, had canceled all of the policies in question as of the latter date, thus lending contradiction rather than corroboration to claimant's said testimony.
In view of all of the foregoing, I am constrained to the conclusion that the determination here appealed from is amply supported by the better quality of the evidence adduced and that it is in all respects proper and correct, by reason of which the petition of appeal must be dismissed, and it will so be ordered. *Page 309